## Hatfield v. Commonwealth.

(Decided September 25, 1923.)

### Appeal from McCreary Circuit Court.

1. Criminal Law—Weapons—Information Upon Which Sheriff Acted Held Immaterial and Incompetent, but Not Prejudicial.—In prosecution for drawing a gun on a sheriff, testimony of the sheriff that he set out to find and arrest accused upon information from another that accused had threatened to get a gun and kill a certain person was immaterial and incompetent, but was not prejudicial where he did not act on such information, and arrest the accused without a warrant, but for a different offense committed in his presence after he found him.

2. Weapons—Guilt of Drawing Gun on Another for Jury.—In a prosecution for drawing a gun on another, evidence held sufficient to authorize the submission of the case to the jury, and it was proper to refuse to direct a verdict of acquittal.

3. Weapons—Instruction that One Pointing Weapon at Another Guilty Not Variance—"Draw."—An instruction that accused was guilty if he unlawfully pointed a gun at another did not constitute a variance under an indictment charging the unlawful drawing of a deadly weapon on another under Ky. Stats., section 1308; the word "draw" meaning "to draw a bead on; to bring into line with the bead or fore sight of a rifle and the hind sight; to aim at."

H. M. CLINE for appellant.

THOS. B. McGREGOR, Attorney General, LILBURN PHELPS, Assistant Attorney General, and J. C. BIRD for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

The appellant, Jason Hatfield, charged by indictment with the offense of unlawfully drawing a deadly weapon, a gun, on another, was tried therefor, by verdict of a jury found guilty, and his punishment fixed at a fine of $100.00 and imprisonment of forty days in jail. He moved for a new trial in the court below, which was refused and he has appealed.

The person upon whom the indictment charges the gun was drawn by the appellant was Tom Davis, sheriff of McCreary county. The appellant's first complaint is that the trial court erred in permitting Davis' to testify as a witness that he set out to find and arrest the appellant upon information from another that he (appellant) had threatened to get a gun and kill one Farris Ball, it being argued that as Davis had no right without a warrant to arrest appellant, even if the latter had made such threat and was on the hunt of Ball with a gun, the statement of Davis as to the information upon which he acted in seeking appellant was incompetent as evidence and should not have been admitted. There would be much force in this contention if Davis had, in fact, acted upon this information in arresting or attempting to arrest appellant, as he had not then committed, but was only threatening to commit a felony, and the sheriff, Davis, was admittedly without a warrant authorizing his arrest for any offense. The statement of Davis, therefore, giving in evidence the information upon which he acted in starting out to find appellant was immaterial and incompetent, and should have been excluded; but its admission by the trial court did not prejudice the appellant in any substantial right, for his arrest by Davis was not because of any offense with which he was charged in the information that Davis had previously received, but for an offense committed in the latter's presence after he found him. That is, the offense for which Davis arrested appellant was that of a breach of the peace arising out of his intoxicated condition, boisterous, disorderly and violent conduct, threatening language and flourishing of a gun in his possession, all done and committed in the presence of Davis who, by reason of the offense having thus been committed in his presence, possessed the authority as sheriff of the county and a peace officer to arrest the appellant therefor without a warrant as was done by him. When commanded to submit to the arrest, how-

ever, the appellant refused to submit and attempted to escape by walking away from the officer; and upon being followed by the latter for the purpose of effecting his arrest, appellant pointed the gun at him, cursed him and threatened to shoot him if he continued to follow him, thereby also committing a statutory offense. Davis, however, persisted in the pursuit and later captured and arrested the appellant.

Such, in brief, was the evidence as furnished by the uncontradicted testimony of the Commonwealth's witnesses, Davis and Anderson. The appellant declined to testify or introduce any evidence in his behalf. Manifestly the foregoing evidence affords no basis for the appellant's further contention that it was insufficient to authorize the submission of the case to the jury and that the trial court erred in refusing to direct a verdict of acquittal.

Finally it is insisted for the appellant that the trial court erred in instructing the jury, in that by instruction 1, they were told that they should find the appellant guilty if they believed from the evidence beyond a reasonable doubt that he unlawfully pointed the gun at Davis, not in his self-defense nor to him reasonably apparent necessary self-defense, whereas, the appellant was charged in the indictment with unlawfully drawing a deadly weapon upon another; it being argued from this fact that proof of merely pointing such weapon at Davis constituted a variance fatal to a conviction under the indictment. We are unable to sustain this contention. Ky. Stats., sec. 1308, under which the indictment was found does, it is true, provide that either to unlawfully and willfully "draw" or "point" a deadly weapon at another will constitute an assault under the statute. So also is the unlawful use in a threatening or boisterous manner of a deadly weapon made an offense by its language, but we are unable to see how the pointing of a weapon can be done without the act being preceded by in some manner the drawing of the weapon. Notwithstanding the language of the statute it is apparent that the acts of drawing and pointing a deadly weapon cannot be disconnected. Such a weapon may be drawn upon another without being pointed at him, but it is difficult to comprehend how it can be pointed at another without first being drawn for that purpose. Among the fifty or more definitions given by Webster's New International Dictionary of the word "draw" is the one giving it the following meaning:

"To draw a bead on, to bring into line with the bead or fore sight of a rifle and the hind sight; to aim at." It is therefore our conclusion that the instruction in the form given was authorized under the indictment although it merely charges the drawing of the weapon.

Regarding the record as substantially free of reversible error the judgment is affirmed.